## COHN & ROSENBERGER, Inc., v. LEADING JEWELRY MFG. CO., Inc.

District Court, S. D. New York.
Nov. 18, 1938.

Mock & Blum and Asher Blum, all of New York City, for plaintiff.

Samuel L. Siegel and Harry Price, all of New York City, for defendant.

BONDY, District Judge.

This is a suit to enjoin the infringement of letters patent No. 1,798,867 issued to Gaston Candas, March 31, 1931, on application filed May 31, 1930.

The patent relates to a brooch consisting of a frame and two clasps or clips which are mounted on the frame and which can be detached from the frame and utilized separately for ornamental purposes.

The plaintiff relies on claims 1 to 4 inclusive.

Claims 3 and 4 specify as an element of the combination a skeleton support or frame having a central aperture and lateral apertures adjacent thereto. The central aperture permits the passage through it of one side of each of two hinged clasps and the folding of the clasps over the bars separating the central from the lateral apertures.

The frame of the defendant's device contains only two apertures and not a central and two lateral apertures. In view of the fact that plaintiff's invention is not a pioneer in the field of clip-brooches, the court is not disposed to consider a frame with a single bar and two apertures the equivalent of a frame with the required three apertures.

Claim 1 reads as follows: "1. In an article of jewelry, the combination comprising a skeleton frame having an aperture on opposite sides thereof for the reception of clasp members and clasp members adapted to embrace portions of said frame, and to effectually conceal said apertures when mounted on said frame, said clasp members being provided with means for rigidly securing the same to said frame."

The defendant's device is a combination which obviously includes a "skeleton frame." The bar in the middle of the frame creates "an aperture on opposite sides thereof." These apertures are "for the reception of clasp members"; one side of each clasp is inserted through one of these apertures before the clasp is folded over the frame.

The combination also includes "clasp members adapted to embrace portions of said frame, and to effectually conceal said apertures when mounted on said frame." Not only does each clasp member overlap part of the frame on both sides thereof but the hinge of the clasp when it is closed, grasps or embraces a portion of the frame extending longitudinally from the central bar of the frame which is in-

serted into a slit or opening adjacent to the hinge. When the clasp members are closed, they rest upon the frame and conceal the apertures in the frame.

The prongs in the clasp members of the defendant's device, in conjunction with the action of the spring in the hinge of each clasp, constitute "means for rigidly securing the clasp members to the frame." When the clasp is closed two prongs extending downward from one side of the clasp closely abut the frame and a third prong fits into a notch in the frame.

Claim 2 differs from claim 1 in its requirement that the frame contain "apertured lugs projecting inwardly from the outer edges of each aperture respectively" and that the clasp members possess "means including spike members adapted to project through the respective apertures in said lugs for rigidly securing and positioning such clasp members on said frame."

The notches in the frame of the defendant's device into which the prongs, or "spike members", extending downward from the clasp members, fit when the clasps are closed are substantially the equivalent of the lugs specified in claim 2.

The record discloses a description of only two clip-brooches which may be considered in connection with the defendant's contention that these claims were anticipated by the prior art. The first is the Lienard brooch, devised in 1929 and described in a patent application which was abandoned. The two clasps of this combination were held together by a bar containing slots or recesses which admitted portions of the clasp members. The bar was not enclosed between the two sides of each of the clasp members, but was placed in position along the backs of the two clasps. The clasps could be attached to the bar without opening them. This combination did not disclose a "skeleton frame" within the meaning of the Candas patent. This phrase refers to a framework outlining and constituting the supporting part of the combination, and which is enclosed between the sides of the clasp members when the latter are mounted upon it and closed. The slots or recesses in the bar of the Lienard combination do not anticipate the apertures in the skeleton frame of the Candas patent. Finally, this bar did not possess or contemplate apertured lugs or any equivalent thereof, for the reception of prongs or spike members attached to the clasps, as specified in claim 2 of the Candas patent.

The Heyman patent, No. 1,894,686, was issued January 17, 1933 on application filed August 6, 1930 and covers a brooch which was manufactured and sold prior to the date when application was filed for the Candas patent. This combination also included a bar and did not possess or disclose a "skeleton frame" or a frame with "apertures" nor "apertured lugs." As in the case of the Lienard brooch, the bar was not enclosed between the two sides of each of the clasp members and apparently it was not necessary to open the clasp members to attach them to the bar.

The court accordingly finds claims 1 and 2 valid and infringed and claims 3 and 4 not infringed.